UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KERRY WILLIAMS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO.<br>:    3:09-CV-17(JCH)<br>: |
| DELOITTE SERVICES, LP<br>    Defendant. | :    OCTOBER 26, 2009<br>:<br>: |

**RULING RE: DEFENDANT'S PARTIAL MOTION TO DISMISS (Doc. No. 10) AND SUPPLEMENTAL RESPONSE TO AMENDED COMPLAINT (Doc. No. 40)**

**I.  INTRODUCTION**

Plaintiff, Kerry Williams ("Williams") brings this action against his former employer, defendant Deloitte Services LP ("Deloitte").  In his Amended Complaint, Williams alleges that Deloitte discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.. See Am. Compl. (Doc. No. 39).  Williams further claims he was unlawfully retaliated against in violation of Title VII of the Civil Rights Act of 1964.  See id.  Additionally, Williams has alleged intentional infliction of emotional distress under Connecticut law. See id.  Deloitte moves to dismiss the claim of intentional infliction of emotional distress.  See Mot. to Dismiss (Doc. No. 10); Def.'s Supp. Resp. re: Am. Compl. (Doc. No. 40).  For the following reasons, the Motion to Dismiss is granted.

**II.  STANDARD OF REVIEW**

In deciding a motion to dismiss, the court takes the allegations of the Complaint

1

as true, and construes them in a manner favorable to the pleader. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005). A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. See United States v. City of N.Y., 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. See Amron v. Morgan Stanley Inv. Advisors Inc.,464 F.3d 338, 344 (2d Cir. 2006). Instead, plaintiffs are obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949.

## III.   FACTS[1]

Deloitte is a Delaware financial services corporation with a Connecticut branch located in Hartford, CT. Williams, an African-American, began working for Deloitte in Hartford in March 2001 as a Mail and Supply Clerk. In 2004, he became a Records Clerk/Records Specialist. During the period of his employment with Deloitte, Williams' supervisor was Virginia Saucier. Williams has claimed that Saucier, as well as other managerial employees of Deloitte, subjected him to "continued and repeated

---

[1] The facts are taken from the Amended Complaint.

discrimination, harassment, and unequal treatment." Compl. at ¶ 14.

Williams alleges that Saucier spoke negatively about him and assigned him more work and more strenuous work than white employees. Williams also claims that white employees were given preferential treatment. When Williams complained about the unequal treatment to Alyssa Jaronko, another manager, Saucier approached Williams in an intimidating manner and said, "Do not make waves in my pond." After this incident, Williams alleges that Saucier refused to allow him to work overtime even when he expressly requested it. Williams also claims that Saucier began to assign him less desirable assignments, including those outside his responsibilities, such as janitorial work. According to Williams, in 2004, Jaronko approached him and told him that Deloitte was aware of Saucier's harassment and differential treatment, but that it could do nothing about it.

On multiple occasions, Williams applied for positions within Deloitte but was not promoted. Williams alleges that Saucier undermined his applications for these positions. On at least two occasions, white employees were hired for the positions for which Williams applied. Williams alleges that Saucier gave these employees preferential treatment. Williams also alleges that Saucier disciplined him for actions, such as taking breaks during the workday and exhausting personal time, for which she did not discipline white workers. Additionally, Saucier never gave Williams a positive year-end review.

Williams claims that in 2006 or 2007, Saucier approached him in confidence and asked him to assist her in creating false accusations against another non-white employee, Moises Garcia. When Williams refused to do so, he claims that Saucier's

harassment of him worsened.  Williams alleges that Saucier would follow him around and stare at him as he worked, making him uncomfortable.  At a 2007 meeting, while Williams stood with his arms crossed, he alleges that Saucier grabbed his arms and yanked them to his sides, telling him he was not allowed to cross his arms while she spoke.  In other meetings, Williams claims that Saucier would single him out in front of other employees in an attempt to embarrass him.  Williams also alleges that Saucier gave him two written warnings for use of personal time off, but failed to discipline other employees who had committed the same violation.  Williams reported the harassment and discrimination to three different managerial employees at Deloitte: Peter Cross, Eddy Mangahas, and Kelly Pinskey.

In 2007, Jose Castro, a co-worker and Saucier's assistant, reported to Cross that Williams had pulled a firearm on him at a company function and threatened Castro's life.  Williams denied the accusation when questioned about it by management, and Deloitte never filed a police report on the alleged incident.  After this incident, Williams alleges that Castro continued to make false complaints to management that Williams was threatening him.  Because of Castro's allegations, Williams was monitored by Deloitte's human resources department.  Williams' co-workers became aware of Castro's allegations and isolated Williams at work.

Williams claims that, because of the discrimination and harassment he faced at work, he had to take a medical leave of absence for treatment for depression and anxiety.  After he returned, Williams claims that Saucier gave him a written warning for errors made during the period while he was on leave.  Williams was terminated on December 7, 2007.  He was told that "poor performance" was the cause of this

termination.

Williams then filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities and with the Equal Employment Opportunities Commission (EEOC). On December 29, 2008, the EEOC issued a Notice of Right to Sue to Williams. See Notice of Right to Sue, Ex. A to Am. Compl.

**IV.   DISCUSSION**

Williams brings a claim for intentional infliction of emotional distress. To sustain such a claim, Williams must show that: (1) Deloitte either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) its conduct was extreme and outrageous; (3) its conduct was what caused the plaintiff's distress; and (4) the plaintiff sustained emotional distress that was severe. See Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000). Deloitte argues that this claim cannot survive because Williams failed to allege conduct in his Complaint that was extreme or outrageous. See Def.'s Mem. in Supp. of Mot. to Dismiss at 4 (Doc. No. 11).

Whether the defendant's conduct was extreme and outrageous is initially a question for the court to address. See Appleton, 254 Conn. at 210. "Only where reasonable minds disagree does it become an issue for the jury." Id. To fit the "outrageousness" prong, Williams must point to conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton, 254 Conn. at 210-11 (quoting Restatement (Second) of Torts § 46 cmt. d)

(internal quotation marks omitted).

This court has held that "routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior." Adams v. Hartford Courant, No. 3:03CV0477(JCH), 2004 U.S. Dist. LEXIS 8546, at *12 (D. Conn May 14, 2004); see also Javier v. Engelhard Corp., No. 3:00CV2301(JCH), 2001 U.S. Dist. LEXIS 17341, at *14 (D. Conn. Oct. 1, 2001). Williams' claims of unfair discipline, negative performance reviews, and failures of promotion fall within this category, and thus do not make out a claim for intentional infliction of emotional distress.

The federal district court in Connecticut has also held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress." Miner v. Town of Cheshire, 126 F. Supp 2d 184, 195 (D. Conn. 2000) (Underhill, J.); see also Taylor v. Maxxim Medical, Inc., No. 3:99CV338(AHN), 2000 U.S. Dist. LEXIS 19727, at *8 (D. Conn. Mar. 23, 2000). Therefore, Saucier's rude, harassing, or threatening comments to Williams do not rise to the level of extreme or outrageous conduct.

The incident in which Saucier grabbed Williams' crossed arms and threw them to his sides while berating him also does not rise to the level of extreme or outrageous conduct. This court finds that grabbing Williams' arms, while impolite, does not go beyond all possible bounds of decency. See, e.g., Cole v. Moorehouse, 2001 Conn. Super. LEXIS 2345 (Conn. Super Ct. Aug. 20, 2001) (granting motion to strike where defendant shouted at plaintiff, then "lunged at the door [and] grabbed plaintiff's hand"); Valencia v. St. Francis Hosp. & Med. Ctr., 1996 Conn. Super. LEXIS 894, at *23 (Conn.

Super. Ct. Apr. 3, 1996) (granting summary judgment[2] where supervisor "grabbed plaintiff's arm in front of patients and coworkers, pulled her into a back room and yelled at her").

Finally, Deloitte cannot be liable for the incidents in which Castro made false reports about Williams. Although Castro is Saucier's assistant, Williams has not alleged that Castro is his supervisor or anything other than another employee of Deloitte. Under the doctrine of respondeat superior, an employer is liable for the intentional torts of its employee only if they were "committed within the scope of the [employee's] employment and in furtherance of his [employer's] business." Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 500-01 (1995). "'[I]n the course of his employment' means while engaged in the service of the master, and it is not synonymous with the phrase 'during the period covered by his employment.' Thus, it must be the affairs of the principal [or master], and not solely the affairs of the agent [or servant], which are being furthered in order for the doctrine to apply." See Matthiessen v. Vanech, 266 Conn. 822, 840 n.15 (Conn. 2003)(internal citations and quotations omitted). Williams has not alleged that Castro's acts were within the scope of his employment, nor that they were in furtherance of Deloitte's business. Williams has also not alleged how Deloitte's affairs would be furthered by Castro making false reports about him. Connecticut courts have struck claims of intentional infliction of emotional distress when the plaintiff failed to allege that tortious actions taken by employees were

---

[2] Although this Ruling addresses a motion to dismiss, other courts have relied on summary judgment rulings when deciding motions to dismiss claims of intentional infliction of emotional distress. See, e.g., Taylor, 2000 U.S. Dist. LEXIS 19727, at *7-*10.

7

done within the scope of their employment or in furtherance of their employer's business.  See, e.g., Meade v. Orthopedic Assocs. of Windham County, 2007 Conn. Super. LEXIS 3424, at *23-*26 (Conn. Super. Ct. Dec. 27., 2007); Walters v. Homestaff Health Care, 1996 Conn. Super LEXIS 321, at *8 (Conn. Super. Ct. Feb. 7, 1996). Therefore, the allegations Williams made regarding Castro's false accusations fail to state a claim of intentional infliction of emotional distress by Deloitte.

## V.    CONCLUSION

For the foregoing reasons, Deloitte's Motion to Dismiss Count Four of the Complaint (Doc. No. 10) is **GRANTED.**  Williams may move within 30 days for leave to replead his claim of intentional infliction of emotional distress with regard to the allegations in paragraphs 40-41 of the Amended Complaint, so long as he has a factual and legal basis to do so.  Counsel should be mindful of the requirements of Rule 11.  A proposed Second Amended Complaint should be attached to any motion for leave to replead.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of October, 2009.


 /s/ Janet C. Hall
 Janet C.  Hall
 United States District Judge